IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CITIZENS COAL COUNCIL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-003 |
| | ) | U.S. District Judge Joy Flowers Conti |
| EMERALD COAL RESOURCES, LP; | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| FOUNDATION COAL CORP.; and | ) | ECF No. 4 |
| ALPHA NATURAL RESOURCES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**

**I.    RECOMMENDATION**

Presently pending is Defendants' Motion to Dismiss, ECF No. 4. It is respectfully recommended that in the interest of judicial efficiency said Motion to Dismiss be denied without prejudice in light of this Court's determination that the additional factual allegations and documentation made of record during the responsive pleading period, but not yet incorporated to an Amended Complaint, both (a) provide more than sufficient basis for Article III and associational standing, and (b) raise plausible claims against each named Defendant under the applicable standard, warranting denial of a request for dismissal under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).   It is, therefore, further recommended that Plaintiff be given leave to amend the Complaint in this action under the Federal Water Pollution Control Act (the "Clean

1

Water Act" or the "CWA"), 33 U.S.C. Section 1251 *et seq.*, within ten (10) additional days from the Order (which will follow the 28 day objections period) on said Motion.

## II.  CASE SUMMATION

Plaintiff Citizens Coal Council ("Citizens") is a national federation of grassroots groups and individuals working to challenge and effect modification of coal industries practices that threaten/adversely affect people and the environment; it is also a registered Pennsylvania 501(c)(3) non-profit corporation and a "citizen" under section 505(g) of the CWA.   Citizens' alleges that one or more of its members own property along waters (including creeks and unnamed tributaries of the South Fork Ten Mile and Whitely Creek watersheds) receiving effluent from the Defendants' industrial coal operations (hereafter the "Waste-Receiving Waters"); and that its members use these waterways for multiple purposes, including aesthetic enjoyment and recreation.   See Complaint at 3.

The Complaint alleges that Emerald Coal Resources, LP ("Emerald") is a Pennsylvania limited partnership formed/maintained by the Defendant corporations - Foundation Coal Corporation ("Foundation") and/or Alpha Natural Resources, Inc. ("Alpha") to operate and hold the environmental permits for the "Emerald Coal Mine" (a longwall coal mine located in Greene County, Pennsylvania) and its related preparation plant, mine discharge sedimentation ponds and basins, and other wastewater discharge facilities.   It further alleges that (a) Foundation acquired the Emerald Coal Mine (and a related limited partnership) in 2004, and (b) Alpha merged with Foundation in 2009.   See Complaint at 4.

The Pennsylvania Bituminous Coal Mining Activity Permit (the "PBCMA Permit") was issued for the Emerald Coal Mine in 1986 (to Defendants' predecessor), as was an "NPDES" permit issued by the Pennsylvania Department of Environmental Protection, permitting the limited discharge of pollutants from the mining facility. This limited discharge permit at issue (the "NPDES Permit") was allegedly last renewed in March 2002 and expired in July, 2006; to Plaintiffs' knowledge Emerald Coal Mine continues to operate under, and in violation of, the expired permit. See Complaint at 5-6.[1] The Complaint provides extensive charts of monitored effluent discharges from Defendants' Emerald facility "discharge outfalls" which flow directly into specified creeks and tributaries, as well as information on (a) the "Warm Water Fishery" ("WWF") and "Trout Stocking Fishery("TSF") designations, and (b) the "impaired water" designations (under the CWA) of the various Waste-Receiving Waters. The charts document violations of the NPDES permitted average monthly concentrations of effluent chemicals including aluminum, iron, manganese, and osmotic pressure, total suspended solids, PH, and settleable solids between 2008 and 2012. They include allegations of maximum concentrations exceeding permitted levels by as much as 20 or more times.

Plaintiff alleges that Defendants have violated and continue to violate the CWA through illegal discharges of mine wastewater and stormwater runoff into the Waste-Receiving Waters,

---

[1] Compare Defendants' Reply to Plaintiff's Memorandum of Law in Opposition at 8 (asserting that an October 1, 2012 change – pursuant to which "no water has been pumped to the surface and discharged from Outlet 16" since – was "authorized by the Pennsylvania Department of Environmental Protection in a permit revision"); id. at 10 (noting that "[w]hile it remains possible for Outlet 16 to discharge periodically . . . the quality of any discharge . . . should differ from that identified in the complaint . . . ."). Cf. *infra* at 4 (CWA Notice of Intent to Sue was provided on October 29, 2012).

degrading the quality of those waters, stressing the ecosystem, and adversely affecting the property and other interests (recreational, aesthetic, environmental) of Citizens' members.

In compliance with Section 505(b) of the Clean Water Act, Plaintiff provided notice of its intent to file suit regarding Defendants' alleged violations of the Act, to the Environmental Protection Agency (the "EPA"), the Pennsylvania Department of Environmental Protection (the "Pa. DEP") and Defendants by letter of October 29, 2012 (the "CWA Notice").   The requisite sixty (60) day period passed and neither the EPA nor the Pa. DEP sought judicial redress; the Complaint was filed on January 2, 2013.

The Complaint seeks declaratory and injunctive relief and the imposition of civil penalties under the Clean Water Act, sections 301 and 309, and the costs of litigation for Defendant's repeated excessive discharge of pollutants into the Waste-Receiving Waters, and the (a) environmental harm and (b) injury to the property, recreational, aesthetic and health interests of its members caused thereby.[2]   This Court has jurisdiction under 28 U.S.C. Section 1331.

Defendants' Memorandum in Support of their Motion to Dismiss (hereafter "Defendants' Memo in Support") asserts entitlement to dismissal of all claims against Foundation and Alpha because Plaintiff fails to allege that they hold the permits, discharged the pollutants or are otherwise liable for Emerald's actions.   See Defendants' Memo in Support at 2.   It further alleges entitlement to dismissal under 12(b)(1) because Plaintiff fails to allege elements necessary to "establish" either (a) Article III standing (*i.e.*, injury to a member traceable to the Defendants and redressable by the Court, see Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)), or (b) associational standing (*i.e.*, members with standing in their own right, protection of interests

---

[2]  The CWA authorizes civil penalties of up to $32,500 per violation occurring prior to January 12, 2009 and up to $37,500 per violation thereafter.   See Complaint at 19.

germane to the association's purpose, and relief requested which does not require individual participation of the members, see Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333 (1977)).

### III.     STANDARD OF REVIEW UNDER 12(b)(6)

A Motion to Dismiss under Fed. R. Civ. Proc. 12(b)(6) is an appropriate means of challenging the legal sufficiency of the Complaint. See, *e.g.*, Sturm v. Clark, 835 F.2d 1009, 111 (3d Cir. 1987). It is to be granted only where the Complaint fails to set forth facts stating "a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). See also Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). In Iqbal, the Supreme Court further explained that "[t]he plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Shortly therafter, in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit described the Rule 12(b)(6) standard as requiring that civil complaints set out "sufficient factual matter" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler, 578 F.3d at 210 (quoting Iqbal). And it set forth the following two-prong test:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts. . . . This 'plausibility'

5

>  determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'

Fowler, 578 F.3d at 210-11 (citations omitted).

In assessing a Motion to Dismiss under Rule 12(b)(6), the Court may consider not only the factual allegations that appear on the face of the Complaint, but also documents attached to or submitted with the Complaint, or incorporated into the Complaint by reference, as well as certain other evidence outside the Complaint/other authentic items of record.  See generally, Pryor v. Nat'l Collegiate Athletic Ass'n., 228 F.3d 548, 560 (3d Cir. 2002); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994).[3]  More specifically, "[i]n resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as 'documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" State College Area School Dist. v. Royal Bank of Canada, 825 F.Supp.2d 573, 577-578 (M.D. Pa. 2011) (quoting Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)).[4]  Consideration of such documents need not convert the motion to dismiss into a motion for summary judgment.

---

[3] Factual allegations within documents described, identified or incorporated in the Complaint may be considered if they are central or integral. See, e.g., In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

[4] See also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); Chester Co. Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990); PBGC v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

IV. ANALYSIS

    A. <u>**Claims Against Defendant Corporations**</u>

Defendants assert the "CWA citizens' suit provision authorizes actions solely against persons . . . alleged to be in violation . . . of an effluent standard or limitation or an order issued concerning such standard or limitation"[5] and that Emerald – to which the "NPDES permit at issue belonged solely" – is a subsidiary of Foundation which in turn is owned by Alpha. See Defendants' Memo in Support at 4-5. Defendants assert that "Foundation and Alpha do not hold the NPDES permit . . . [but] are merely parent corporations of Emerald" and "[t]here is . . . no basis for imputing liability on a parent corporation under the CWA *without allegations that it has done something more than simply serve as a 'parent'"*. Id. at 5 (quoting <u>United States v. Avatar Holdings, Inc.</u>, 1996 WL 479533, 14-15 (M.D. Fla.) (nothing that under CWA "parent must 'direct or cause' violations") (emphasis added); <u>United States v. Bushey & Sons, Inc.</u>, 363 F. Supp. 110 (D. Vt. 1973), *aff'd* 487 F.2d 1393 (2d Cir. 1973) (imputing liability where subsidiary was alter ego of parent)).

In its Memorandum of Law in Opposition ("Plaintiff's Memo in Opposition"), Plaintiff observes that in piercing the corporate veil, the <u>Bushey</u> Court noted that "[t]he public interest in preserving the environmental integrity . . . is sufficiently paramount that the parent corporation . . . which profits for the operations of its alter-ego subsidiaries should be accountable for" environmental violations. Plaintiff's Memo in Opposition at 5. Moreover, Plaintiff provides extensive additional factual allegations and documentation regarding the apparently overlapping

---

[5] <u>Cf.</u> Complaint at 3 (observing that except as in compliance with a permit, the "discharge of a pollutant" (*e.g.*, chemical wastes, biological materials, heat, and industrial waste discharged into water) *by any person* is unlawful under Section 1311(a) of the CWA).

7

roles of employees of Foundation and/or Alpha who have signed and/or been listed on Emerald Coal Mine "permit application submittals and correspondence".  See, *e.g.*, Plaintiff's Memo in Opposition at 3-4 (identifying Terry Dayton as an Alpha employee and "environmental manager" for Emerald; his correspondence with the Pa. DEP concerning Emerald permitting documents and enforcement agreements, and correspondence regarding discharges - including identification/addresses for Alpha and/or Foundation; and his representation of Foundation at Pa. DEP meetings); id. at 4 (also identifying Kevin Moore as an Alpha (and possibly also Foundation) employee and environmental engineer, corresponding with the Pa. DEP regarding NPDES Permit matters on Emerald Coal Resources LP letterhead including identification of Emerald Coal Resources LP as an Alpha affiliate at the same address); id. (identifying correspondence between Pa. DEP and Foundation regarding subsidence claim related to Emerald Coal Resources' permit). Plaintiff accordingly asserts that the Defendants are "integrat[ed] . . . with regard to Pennsylvania activities" and that Alpha and Foundation are "inextricably involved" with the Emerald Mine environmental obligations, and are "guiding and directing Emerald's activities."  Id. at 4-5.  Cf. also id. at 5 (asserting that it would be against public policy to permit companies which profit from "and in fact manage [natural resources for industrial commerce], to divest themselves from important statutory obligations" meant to "protect the environment and the public"); id. (observing that "state environmental regulatory agency turns to the parent corporation to deal with mining impacts on area residents").[6]  Cf., *e.g.*, U.S. v. Avatar Holdings, Inc., 1995 WL 871260, *14

---

[6] Compare generally Defendants' Reply to Plaintiff's Memorandum of Law in Opposition (hereafter "Defendants' Reply") at 2- (disputing, and providing Declarations of employees regarding, Plaintiff's factual averments); id. at 2 (asserting that Foundation was "parent company of Emerald" until merger with Alpha, after which Foundation ceased to exist and Alpha only owned Emerald shares and not assets, and Alpha neither owned nor operated the "Emerald

(M.D. Fla. Nov. 22, 1995) (where subsidiary holding NPDES permit violates CWA, parent company may be liable if it exercised sufficient control such that "it may be considered a person who violates", *e.g.*, through activities such as "directing or causing the violations"); Assateague Coastkeeper v. Alan & Kristin Hudson Farm, 727 F.Supp.2d 433, 442 (D. Md. 2010) (noting that statute clearly makes violations by any person unlawful, not solely permit holders) (citing Avatar). A Complaint amended in accordance with the supplemented record in this action would state a plausible claim for liability as to each Defendant.[7]

### B. Plaintiff's Article III and Associational Standing

Standing under Article III is met by an individual member who has suffered an injury in fact, traceable to the challenged action(s) of the Defendant(s) and likely to be redressed by a

---

facilities"); id. (asserting, correctly, that "changing hats" and concurrent responsibilities are, *in themselves*, "insufficient to impose liability" on corporate parent).   But compare also *supra* text at 7 (Defendants' differing factual averments regarding corporations in Memo in Support).

   Cf. Pearson v. Component Technology Corp., 247 F.3d 471, 484 (3d Cir. 2001) (noting that neither mere ownership of subsidiary nor shared directors justifies imposition of liability on parent) (citing United States v. Bestfoods, 524 U.S. 51, 69 (1998)).   Id. (" However, under both state and federal common law, abuse of the corporate form will allow courts to employ the 'tool of equity' known as veil-piercing . . . . Courts have held veil-piercing to be appropriate 'when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy . . .   .'") (quoting Zubik v. Zubik, 384 F.2d 267, 272 (3d Cir.1967)).

[7] Defendants correctly observe that "employees holding positions with a parent and subsidiary 'can and do change hats to represent the two corporations separately'". Defendant's Reply at 3 (citing Bestfoods). However, Plaintiff has raised - in its supplemental pleading/documents - averments sufficient to plausibly suggest – at this stage of the litigation - that decisions made/actions taken in violation of the NPDES Permit, and/or discharges made illegally in the absence of a current (non-expired) permit, were attributable to individuals sporting their "parent" (as opposed to "subsidiary") hat and/or that the subsidiary was merely an instrumentality utilized by the parent.   And although the corporate form is never lightly disregarded, fact-based questions of a corporation's decisions and actions through its own personnel, and of the degree of a corporation's control over a subsidiary, are quite germane to an entity's potential liability for conduct violative of Federal environmental laws and policy.

favorable decision. See Lujan, *supra*. Associational standing is met where members would have standing in their own right, the interests at issue are germane to the association's purpose, and the requested relief does not require individual members' participation in the litigation. See Hunt, *supra.*

Defendants assert that the Supreme Court's decisions in Twombly and Iqbal, *supra*, apply to the sufficiency of a Complaint as to standing under a 12(b)(1) motion, and that Plaintiff's "bald legal conclusions" and "simpl[e] assert[ion] of each element" are "not sufficient to satisfy the fact based pleading requirements" of Twombly and Iqbal. Defendants' Memo in Support at 6.

Defendants' mischaracterization of the content of the current Complaint aside, the Court is *highly skeptical* of Defendants' assertions regarding the purported applicability or extension of Twombly and Iqbal to its Rule 12(b)(1) Motion on standing. See, *e.g.*, Sierra Club v. Energy Future Holdings Corp., 2013 WL 485363, *3 (W.D. Tex. Feb. 6, 2013) (denying 12(b)(1) motion to dismiss on Article III standing, citing Lujan, and holding that "[a]t the pleading stage of proceedings, the plaintiff need only make general factual allegations of injury caused by the defendants"); id. at *4 (separately applying Twombly and Iqbal to dismissal under 12(b)(6)); New York Communities for Change v. New York City Dept. of Educ., 2012 WL 7807955, *14 (E.D. N.Y. Aug. 29, 2012) (analyzing facial challenge to standing under 12(b)(1) with reference to Lujan and Hunt and noting Supreme Court's observation in Lujan that lower bar at this stage "presumes that general allegations embrace those specific facts that are necessary to support the claim"); id. at *20 (separately applying Twombly and Iqbal to dismissal under 12(b)(6)); Chart v. Town of Parma, 2012 WL 3839241, *4, *8 (W.D.N.Y. Aug. 28, 2012) (same); California Sportfishing Protection Alliance v. Callaway, 2012 WL 947483 (E.D. Cal. Mar. 20, 2012) (applying Lujan and

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 183 (2000), respectively, to Article III and associational standing, and concluding that "standing seems pretty clear" where Complaint alleges (a) members who "live, recreate and work in and around waters" and "use and enjoy" waters threatened/impaired by defendant's discharges and (b) association is dedicated to preservation, protection and defense of environment and waters).[8]

However, this Court need not now directly reject this assertion (as to which there is no express precedent in the Court of Appeals for the Third Circuit) given that the factual allegations contained in the Complaint, together with the additional factual allegations and documentation of record made with the responsive pleadings, are sufficient to establish plausible Article III and associational standing.

More particularly, as to Article III standing, Plaintiff's Complaint alleges, and Plaintiff supplements the record with additional facts regarding, actual and/or imminent invasion of members' concrete and particularized legally-protected interests (*e.g.*, impairment of property and aesthetic/recreational use values by Defendants' illegal pollution of the Waste-Receiving Waters). See Ohio Valley Environmental Coalition, Inc. v. Patriot Coal Corp., 2011 WL 6101921, *9-10 (S.D. W.Va. Dec. 7, 2011) (denying motion to dismiss citizens' CWA action and finding allegations of amended complaint "sufficient to state a claim of standing that is plausible on its face" where allegations did not identify group membership or names of members on whom

---

[8] See Plaintiff's Memorandum in Opposition at 7 (citing other post-Twombley and Iqbal cases which applied traditional standing analysis). Compare Defendants' Reply at 6 (asserting, inappositely, that Twombly and Iqbal are applied in "environmental cases" – as indeed they are with respect to 12(b)(6), as opposed to 12(b)(1) standing, motions). Id. (citing, incorrectly, Pennsylvania v. Beazer East, Inc., 2011 WL 4527356 (W.D. Pa. 2011), which denied a motion for reconsideration). The Court observes that its underlying decision in Pennsylvania v. Beazer East, Inc., 2010 WL 4553561 (W.D. Pa. Nov. 3, 2010) applied the plausibility standard to a 12(b)(6) motion in an environmental case that contained no question of standing.

plaintiff based standing but did allege that members lived or grew up on water bodies into which pollutants were discharged, and members no longer used or were otherwise impacted by fears regarding defendants' contamination of waters). Cf. Sierra Club v. Energy Future, *supra* at *3 (finding complaint "sufficient to raise a reasonable inference" to establish that member had sustained particularized injury from defendant's conduct where complaint alleged (a) members lived, worked and recreated in areas impacted by defendant's unlawful pollution and (b) their aesthetic, recreational, environmental, economic and health-related interests were injured); id. at *4 (further noting that plaintiff was not required to "name names" or identify a particular member in its complaint); Chart v. Town of Parma, *supra* at *4 (denying motion to dismiss for lack of standing, and holding that environmental plaintiffs adequately allege injury-in-fact when they aver they use an affected area and are persons for whom the aesthetic and recreational values are lessened by the challenged activity) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 183 (2000)). Cf. also Plaintiff's Memo in Opposition at 11-12 (discussing supplementation of record with Declaration of member who owns land adjacent to Waste-Receiving Waters); id. 8-9 (citing Sierra Club v. Morton, 405 U.S. 727, 734-36 (1972)); id. at 9-10 (noting that traceability of challenged action and likely redress are met where (a) Complaint alleges that Defendants "have discharged illegal levels of pollution into" the Waste-Receiving Waters, adversely affecting Citizens' members interest, and (b) injunctive relief and civil penalties are likely to deter/halt continuing violations) (citations omitted).

     Similarly, as to associational standing, the Complaint, together with Plaintiff's subsequent additional factual averments and documentation, plausibly allege that (a) Citizens' members have an injury-in-fact that is directly related to Defendants' unlawful discharges, which injury can be

addressed by a favorable litigation decision, and (b) the interests litigated are germane to the organization's purposes as a grassroots environmental organization working to preserve and protect natural resources, specifically including those allegedly impacted by Defendants' illegal conduct and violation of Federal environmental regulations/related permits.  See, *e.g.*, Riverkeeper Inc. v. Mirant Lovett, LLC, 675 F.Supp.2d 337, 342, 349-352 (S.D.N.Y. 2009) (broadly discussing requirement of facial plausibility under Twombly and Iqbal); id. (concluding that plaintiff association had standing as to CWA action where (a) members met Article III standing, (b) association's mission was to conserve and protect Hudson River resources, and (c) individual participation was not required by claim/relief requested) (citing Lujan and Laidlaw). Cf. Sierra Club v. Energy Future, *supra* at *3 (denying motion to dismiss and finding associational standing met on same basis); id. (also noting that civil penalties and injunctive relief do not require the inclusion of any individual member); California Sportfishing Protection Alliance v. Callaway, *supra*.  Cf. also Plaintiff's Memo in Opposition at 10-11 (noting that elements of germaneness to organization's purpose and non-requirement of member participation in litigation are met where (a) Complaint alleges that Citizens' purpose includes challenging/changing industry practices to protect people and the environment and supplemental filings include Declaration of Executive Director; and (b) parameters of requested relief do not require member participation, no claim of personal damages or individualized relief is being asserted).

## VI. **RECOMMENDATION**

Accordingly, upon review of the pleadings and briefs of record, and in the interest of judicial efficiency, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 4) be denied without prejudice. It is further respectfully recommended that Plaintiff be given leave to file, within ten (10) days from the date of the Order on said Motion, an Amended Complaint in keeping with both (a) the additional allegations and documentation made of record during the responsive pleading period and (b) this Report and Recommendation.[9] The Court trusts that, if the Recommendation is adopted and the Complaint amended, Defendants will not delay this litigation or impose on limited judicial resources by renewing a request for dismissal on grounds that would be clearly unwarranted in light of the case law and analysis/guidance provided herein.

In accordance with the Magistrate Judges Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

_____
Lisa Pupo Lenihan
United States Chief Magistrate Judge

Date:   June 10, 2013

---

[9] Cf. Plaintiff's Memo in Opposition at 12 ("Plaintiff has further supported its allegations with evidence that fully addresses any purported deficits.").

14